**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

---

NONI BODDIE,

               Plaintiff,

       v.

COMCAST (CC) OF WILLOW GROVE,
COMCAST CABLE COMMUNICATIONS
MANAGEMENT, LLC AND COMCAST
CORPORATION,

               Defendants.

No. 1:21-cv-20740-NLH-SAK

**OPINION**

---

**APPEARANCES**:

LANE JUSTIN SCHIFF
CONSOLE MATTIACCI LAW, LLC
1525 LOCUST STREET
9TH FLOOR
PHILADELPHIA, PA 19102

    *On behalf of Plaintiff*

A. KLAIR FITZPATRICK
MORGAN LEWIS & BOCKIUS
1701 MARKET STREET
PHILADELPHIA, PA 19103

CAROLINE RILEY ROBB
MORGAN LEWIS & BOCKIUS LLP
1701 MARKET STREET
PHILADELPHIA, PA 19103

    *On behalf of Defendants*

**HILLMAN**, **District Judge**

Before the Court is Defendants' Motion to Compel

Arbitration.  (ECF 8).  For the reasons expressed below, the

Motion will be granted and this case will be stayed pending

arbitration.

## I.     BACKGROUND

On May 2, 2019, Plaintiff signed an offer letter for a

Senior Director of Human Resources position with Comcast.   (ECF

13 at 9).   The letter included the following language:

> Comcast has a dispute resolution program for
> its employees, known as Comcast Solutions,
> which provides a three-step process
> (facilitation, mediation and binding
> arbitration) for resolving a variety of
> workplace legal issues should there be any
> that arise between you and the Company
> during or after your employment. A brochure
> with information and directions on how to
> obtain additional information related to the
> program is being provided to you along with
> this offer letter. Please review this
> information carefully, as the program
> affects the legal rights of both you and the
> Company (including a waiver of the right to
> bring a civil action in federal or state
> court or before a civil judge or jury, as
> well as a waiver of the right to bring or
> participate in a class action, collective
> action or representative action). . . . By
> accepting this offer of employment with the
> Company and signing below, you acknowledge
> that you understand the terms of the Comcast
> Solutions program and also acknowledge that
> both you and the Company agree to
> participate in and be bound by the terms of
> the Comcast Solutions program.

(ECF 8-5 at 4).

On May 21, 2019 and May 1, 2020, Plaintiff again

acknowledged the Comcast Solutions Program, pursuant to a Code

of Conduct and Employee Handbook Acknowledgement that stated as

follows:

Unless I am not participating in Comcast
Solutions because I (i) previously "opted
out" of the program during the program roll
out period, or (ii) am covered by a
collective bargaining agreement or an
authorized employment agreement which does
not include participation in Comcast
Solutions, I understand that the Comcast
Solutions Program is a mutually-binding
contract between Comcast and me and that my
continued employment with Comcast is
confirmation that I am bound by the terms of
the Comcast Solutions Program. I further
understand and agree that by participating
in the Comcast Solutions Program, both
Comcast and I waive any right to bring or
participate in a case in court (on an
individual, collective, representative, or
class basis) or have a trial by court,
judge, or jury for any Covered Claims (as
that term is defined in the Comcast
Solutions Program). Further information
about the Comcast Solutions Program --
including the Program Guide, Frequently
Asked Questions, and various Program forms
(including the Initial Filing form) -- is
available for me to review on ComcastNow.
. . .
By clicking "I acknowledge," I also certify
that (i) I am in compliance with the Code of
Conduct, (ii) I have disclosed and, if
required, obtained approval, of every
circumstance where disclosure and/or
approval is required under the Code of
Conduct, and (iii) I have reported all
potential Code of Conduct violations of
which I am aware. I understand and agree
that if I click 'I do not acknowledge' and
disclose an exception below, I am still
obligated to abide by all rules, policies,
and standards set forth in the Code of
Conduct and Employee Handbook (and all
related policies) and am still bound by the
Comcast Solutions Policy."

(ECF 8-5 at 38,41).  On both occasions Plaintiff clicked "I

acknowledge."  (ECF 13 at 10).

     On December 28, 2021, Plaintiff filed her Complaint in this

Court alleging race discrimination in violation of Title VII of

the Civil Rights Act of 1964, Section 1981 of the Civil Rights

Act of 1866, and the New Jersey Law Against Discrimination.

(ECT 1).  Defendants filed a Motion to Compel Arbitration and

Stay Proceedings on March 7, 2022.  (ECF 8).  On April 4, 2022,

Plaintiff filed her response in opposition.  (ECF 13).  Finally,

on April 25, 2022, Defendants filed their reply in support of

their motion.  (ECF 21).

## II.   LEGAL STANDARD

     Depending on the circumstances, a motion to compel

arbitration may apply a motion to dismiss or motion for summary

judgment standard.  If the face of the complaint and any

documents relied on in the complaint clearly show that a party's

claim is subject to an enforceable arbitration clause, the Court

will use a "Rule 12(b)(6) standard without discovery's delay."

Guidotti v. Legal Helpers Debt Resolution, L.L.C., 716 F.3d 764,

777 (3d Cir. 2013) (internal citation omitted).  The motion to

dismiss standard is inappropriate, however, where "the motion to

compel arbitration does not have as its predicate a complaint

with the requisite clarity to establish on its face that the

parties agreed to arbitrate."  Id. at 774 (internal quotation

omitted).  In this situation, courts must "use the summary

judgment standard under Rule 56(a), in which 'the motion [to

compel] should be granted where there is no genuine dispute as

to any material fact and the movant is entitled to judgment as a

matter of law.'"  Seme v. Gibbons, P.C., No. 19-857, 2019 WL

2615751 at *2 (quoting Maddy v. Gen. Elec. Co., 629 F. App'x

437, 440 (3d Cir. 2015)).  Here, the summary judgment standard

is appropriate where the complaint does not refer to the

arbitration agreement, but rather defendants attach documents in

support of their motion to compel.

Summary judgment is appropriate where the Court is

satisfied that the materials in the record, including

depositions, documents, electronically stored information,

affidavits or declarations, stipulations, admissions, or

interrogatory answers, demonstrate that there is no genuine

issue as to any material fact and that given the undisputed

facts the moving party is entitled to a judgment as a matter of

law.  Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986);

Fed. R. Civ. P. 56(a).

A dispute about a material fact is "genuine" "if the

evidence is such that a reasonable jury could return a verdict

for the nonmoving party."  Anderson v. Liberty Lobby, Inc., 477

U.S. 242, 248 (1986).  A fact is "material" if, under the

governing substantive law, a disputed fact may affect the

outcome of the suit.  Id.  In considering a motion for summary

judgment, a district court may not make credibility

determinations or engage in any weighing of the evidence.  Id.

at 255.  Instead, the non-moving party's evidence "is to be

believed and all justifiable inferences are to be drawn in his

favor."  Id.

Initially, the moving party has the burden of demonstrating

the absence of a genuine issue of material fact.  Celotex, 477

U.S. at 323.  Once the moving party has met this burden, the

burden shifts and the nonmoving party must identify specific

facts showing that there is a genuine issue for trial.  Id.  To

withstand a properly supported motion for summary judgment, the

nonmoving party must identify specific facts and affirmative

evidence that contradict those offered by the moving party.

Anderson, 477 U.S. at 256-57.  A party opposing summary judgment

must do more than just rest upon mere allegations, general

denials, or vague statements.  Saldana v. Kmart Corp., 260 F.3d

228, 232 (3d Cir. 2001).

In deciding a motion to compel arbitration, the Court must

ask (1) whether the parties entered into a valid arbitration

agreement and (2) whether the dispute at issue falls within the

scope of the arbitration agreement.  Century Indem. Co. v.

Certain Underwriters at Lloyd's, 584 F.3d 513, 523 (3d Cir.

2009).  If there is a valid arbitration agreement and the

dispute is covered by the arbitration agreement, the Federal

Arbitration Act requires the court to enforce the arbitration

agreement.  Federal Arbitration Act, 9 U.S.C. § 4.  The party

seeking to avoid arbitration bears the burden of demonstrating

that arbitration should not be compelled.  Green Tree Fin.

Corp.-Alabama v. Randolph, 531 U.S. 79, 92 (2000).  "It is well

established that the Federal Arbitration Act (FAA) reflects a

'strong federal policy in favor of the resolution of disputes

through arbitration.'" Kirleis v. Dickie, McCamey & Chilcote,

P.C., 560 F.3d 156, 160 (3d Cir. 2009) (quoting Alexander v.

Anthony Int'l, L.P., 341 F.3d 256, 263 (3d Cir. 2003)).

## III.  DISCUSSION

### A. Subject Matter Jurisdiction

This Court has jurisdiction over Plaintiff's federal claims

under 28 U.S.C. § 1331 and Plaintiff's New Jersey Law Against

Discrimination claims under 28 U.S.C. § 1367.

### B. Delegation of Issue of Arbitrability

Defendants argue that "the parties delegated the issue of

arbitrability, or whether a dispute falls within the scope of

the arbitration provision, to the arbitrator in the first

instance."  (ECF 8-1 at 20).  Plaintiff expands that "the

Program . . . makes clear that '[a]ny issue concerning

arbitrability of a particular issue or claim pursuant to the

arbitration agreement (*except for those concerning the validity*

*or enforceability of the Waiver*) shall be resolved by the

Arbitrator, not Court.'"  (ECF 13 at 12 (quoting the arbitration

agreement Exhibit C to Motion to Compel) (alteration and

emphasis in original)).  On the other hand, "[a]ny issue

concerning the validity or enforceability of the waiver in this

section ("Waiver") *shall be decided by a court of competent*

*jurisdiction, and the arbitrator shall not have any authority to*

*considerer or decide any issue concerning the validity or*

*enforceability of the Waiver.*" (Id. (alteration and emphasis in

original)).  Plaintiffs conclude that "because Plaintiff is

explicitly challenging the validity and enforceability of the

waiver by arguing that the Program is unconscionable, this

Court, and not an arbitrator, should decide the issue of

arbitrability."  (Id. at 12).

Based on the plain language of the Agreement and the

representations of all parties, we will analyze only whether

there is a valid arbitration agreement, not whether the present

issue falls within the scope of the agreement.

### C. <u>Validity of Arbitration Agreement</u>

Plaintiff argues that the Arbitration Agreement is "invalid

and unenforceable because it is unconscionable."  (ECF 13 at

13).  Defendants respond that the Agreement is valid and

enforceable.  (ECF 21 at 6).

Courts "look to applicable state law to determine whether

the parties agreed to arbitrate."  <u>Ailments Krispy Kernels, Inc.</u>
<u>v. Nichols Farms</u>, 851 F.3d 283, 289 (3d Cir. 2017).  In New

Jersey,[1] "[a]n enforceable agreement requires mutual assent, a

meeting of the minds based on a common understanding of the

contract terms."  <u>Id.</u>  (quoting <u>Morgan v. Sanford Brown Inst.</u>,

137 A.3d 1168, 1180 (N.J. 2016) (alteration in original)).

"The unconscionability determination requires evaluation of

both procedure and substance."  <u>Rodriguez v. Raymours Furniture</u>

<u>Co.</u>, 138 A.3d 528, 541 (N.J. 2016).  New Jersey courts apply "a

sliding-scale approach to determine overall unconscionability,

considering the relative levels of both procedural and

substantive unconscionability."  <u>Delta Funding Corp. v. Harris</u>,

912 A.2d 104, 111 (N.J. 2006).  Here, Plaintiff asserts that

"the Program is both procedurally and substantively

unconscionable."  (ECF 13 at 13).

### i. Procedural Unconscionability

Plaintiff argues that the Agreement is procedurally

unconscionable because it is a "contract of adhesion."  (ECF 13

at 15).

---

[1] The parties have not raised any question as to choice of law.
Both Plaintiff and Defendants rely on New Jersey law in their
briefing, and thus seem to represent that New Jersey law
applies.  We note that all of the parties listed in the
complaint are listed with New Jersey addresses and that Comcast
has substantial operations in New Jersey.  Therefore, we will
apply New Jersey law in resolving this motion.

New Jersey courts have held that a finding that a contract
is a contract of adhesion does not necessarily, on its own,
serve as proof of unconscionability.  Delta Funding Corp., 912
A.2d at 111.  Instead, identifying an agreement as a contract of
adhesion represents "the beginning, not the end, of the inquiry
into whether a contract, or any specific term therein, should be
deemed unenforceable."  Uddin v. Sears, Roebuck & Co., et al.,
No. 13-6504, 2014 WL 1310292, at *7 (quoting Muhammad v. County
Bank of Rehoboth Beach, Delaware, 912 A.2d 88, 96 (N.J. 2006)).

Rather than simply declaring all contracts of adhesion
procedurally unconscionable, the New Jersey Supreme Court has
held that the defense of unconscionability "calls for a fact-
sensitive analysis in each case, even when a contract of
adhesion is involved."  Delta Funding Corp., 189 N.J. at 39.
New Jersey courts specifically require analysis of four factors:
"(1) the subject matter of the contract, (2) the parties'
relative bargaining positions, (3) the degree of economic
compulsion motivating the 'adhering' party, and (4) the public
interests affected by the contract."  Uddin, 2014 WL 1310292, at
*7 (quoting Muhammad, 912 A.2d at 97).  If a plaintiff fails to
adequately show that a contract of adhesion was unfairly signed
according to these factors, the plaintiff has failed to prove
procedural unconscionability.  Id.  In analyzing these factors
we note that the New Jersey Supreme Court has explained that

10

"[v]irtually every court that has considered the adhesive effect
of arbitration provisions in employment applications or
employment agreements has upheld the arbitration provision
contained therein despite potentially unequal bargaining power
between employer and employee."  Martindale v. Sandvik, Inc.,
800 A.2d 872 (N.J. 2002).  In addition, "the economic coercion
of obtaining or keeping a job, without more, is insufficient to
overcome an agreement to arbitrate statutory claims."  Quigley
v. KPMG Peat Marwick, LLP, 749 A.2d 405, 412 (N.J. Super. App.
Div. 2000).

There does not appear to be any true dispute here that the
Contract was a contract of adhesion.  First, agreement to the
Comcast Solutions Program was a requirement of accepting the job
offer.  (ECF 13 at 9).  Second, the Acknowledgement Forms
Plaintiff was presented with to reaffirm agreement were
standardized forms that gave Plaintiff no choice but to agree to
their terms.  Regardless of whether she clicked "I acknowledge"
or "I do not acknowledge," she would remain bound by the terms
of Comcast Solutions Program.  (Id. at 10).  Consequently, the
only way Plaintiff could have avoided the terms of Comcast
Solutions was by quitting her job.  (Id.).  Such a contract has
many of the attributes of a contract of adhesion.  However, as
set out above, such a finding would not require the Court to
hold the arbitration agreement procedurally unconscionable

unless Plaintiff has sufficiently demonstrated that the contract
was unfair under the factors outlined by the New Jersey courts.

Plaintiff does not engage in a discussion of the factors
set out above, but instead points to an opinion in this district
analyzing the same Arbitration Agreement, in which Judge Kugler
stated: "Because Plaintiff was forced to accept the terms of
Comcast Solutions or quit his job, the Court is willing to
assume that he has made a strong showing of procedural
unconscionability." Hubbard v. Comcast Corp., No. 18-16090,
2020 WL 4188127, at *7 (D.N.J. July 21, 2020).  The Court went
on to say that "[n]evertheless, Plaintiff is unable to show that
the terms of Comcast Solutions are substantively
unconscionable." Id.  Plaintiff cites this as proof that the
Agreement is procedurally unconscionable.

As noted above, unconscionability is a fact-specific
analysis.  In addition, Plaintiff has the burden of proving
unconscionability. Montgomery v. Bristol-Myers Squibb Co., No.
19-19948, 2020 WL 3169373, at *3 (D.N.J. June 15, 2020).
Plaintiff has not set forth the specific facts of surrounding
her entering into the Arbitration Agreement.  On the other hand,
Defendants point out that Plaintiff is a "seasoned HR
professional" and that she was aware of the Arbitration
Agreement at the time she accepted her employment offer.  (ECF
21 at 10).  Because Plaintiff has not pointed to specific

factors demonstrating that her arbitration agreement was entered

into under unfair or unconscionable circumstances, we will not

hold that the agreement was procedurally unconscionable.

### ii. Substantive Unconscionability

"New Jersey courts may find a contract term substantively

unconscionable if it is 'excessively disproportionate' and

involves an 'exchange of obligations so one-sided as to shock

the court's conscience.'" Agrabright v. Rheem Mfg. Co., 258 F.

Supp. 3d 470, 481 (D.N.J. 2017) (quoting Delta Funding Corp.,

912 A.2d at 120).

Plaintiff alleges that the Arbitration Agreement does not

provide for a fair forum.  She explains that pursuant to the

agreement, she would be required to arbitrate her claims with an

alternative dispute resolution services organization called

JAMS.  (ECF 13 at 16).  Plaintiff alleges that this is not a

fair forum to adjudicate her race discrimination claims because

88% of all JAMS arbitrators are white, and more specifically

only one of the eleven JAMS arbitrators in the Philadelphia

region that handles employment matters is black.  (Id.).

Plaintiff attempts to rely on Batson v. Kentucky in support

of her argument that arbitration is an unfair forum.  She

compares the lack of black arbitrators to "excluding 'jurors'

based on race."  (ECF 13 at 19).  Plaintiff does not point to

any caselaw that makes this connection, but instead refers to a

law review article in support of this novel argument.  (ECF 13 R 19).

The Supreme Court has rejected arguments of an unfair or biased arbitration forum, stating, "[w]e decline to indulge the presumption that the parties and arbitral body conducting a proceeding will be unable or unwilling to retain competent, conscientious and impartial arbitrators." Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 30 (1991) (quoting Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 105 S. Ct. 3346, 3357-58, 87 L. Ed. 2d 444 (1985) (alteration in original)).  In Glimer, the Supreme Court noted arbitration rules that would protect against bias. Id.  Defendants point to similar protections here, pointing to the JAMS rule that states that arbitrators must "promptly disclose any circumstance likely, based on information disclosed in the application, to affect the Arbitrator's ability to be impartial or independent." (ECF 21 at 14).

Moreover, the Supreme Court has noted that, "[t]he FAA also protects against bias, by providing that courts may overturn arbitration decisions '[w]here there was evident partiality or corruption in the arbitrators.'  9 U.S.C. § 10(b)." Gilmer, 500 U.S. at 30-31.  Plaintiff's assertion that the arbitration agreement is substantively unconscionable due to bias does not have legal support.  See Falk v. Aetna Life Ins. Co., No. 19-

14

00434, 2019 WL 4143882, at *6 (D.N.J. Aug. 31, 2019); Hubbard v.
Comcast Corp., No. 18-16090, 2020 WL 4188127, at *8 (D.N.J. July
21, 2020).

### D. **Public Policy**

Plaintiff reiterates her substantive unconscionability
arguments in asserting that the arbitration agreement is void as
against public policy.  Again, Plaintiff cites to Batson and its
progeny in support of her argument that arbitration here
violates public policy.  (ECF 13 at 20).  Plaintiff does not
cite to any caselaw that analogizes jurors in Batson to a
whether a pool of arbitrators is diverse.  The Seventh Circuit
has specifically refused to extend Batson to arbitration.  Smith
v. Am. Arb. Ass'n, Inc., 233 F.3d 502, 507 (7th Cir. 2000).  The
Seventh Circuit explained that arbitration is triggered pursuant
to private contracts.  As such there is not state action
implicating the equal protection clause.  The Court explained
that "[t]he fact that the courts enforce these contracts, just
as they enforce other contracts, does not convert the contracts
into state or federal action and so bring the equal protection
clause into play."  Id.  While Seventh Circuit precedent is not
controlling, this Court similarly declines to extend Batson to
the arbitration context.  Plaintiff's argument that Batson
undermines her arbitration agreement does not have legal
support.

## E. **Discovery on Arbitration Agreement's Validity**

The parties may be entitled to limited discovery on the question of arbitrability "if the complaint and its supporting documents are unclear regarding the agreement to arbitrate, or if the plaintiff has responded to a motion to compel arbitration with additional facts sufficient to place the agreement to arbitrate in issue."  Guidotti v. Legal Helpers Debt Resol., L.L.C., 716 F.3d 764, 776 (3d Cir. 2013)

Plaintiff has not described what discovery is needed nor has she pointed to any material issues of fact relating to the question of validity of the arbitration agreement.  Further, Plaintiff has not put forward any legally cognizable argument sufficient to undermine the motion to compel.  Thus, there is no factual issue here warranting limited arbitrability discovery.

## IV.   CONCLUSION

For the reasons expressed above, Defendants' Motion will be GRANTED and proceedings in this case are STAYED pending the results of arbitration.

An appropriate Order will be entered.


Date: February 22, 2023                    s/ Noel L. Hillman
At Camden, New Jersey                      NOEL L. HILLMAN, U.S.D.J.

16